UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TITO MORELL,

    Petitioner,

v.       Case No. 8:17-cv-2074-VMC-CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

### ORDER

This cause is before the Court on remand for consideration of Ground Three of Petitioner Tito Morell's petition for writ of habeas corpus, filed under 28 U.S.C. § 2254. (Doc. 1.) Having considered Ground Three of the petition, the supplemental response to Ground Three (Doc. 38), and Morell's reply (Doc. 43), the Court denies Ground Three.

### Procedural History

Morell was convicted after a jury trial of armed robbery with a firearm. (Doc. 10, Ex. 1, pp. 137-38.) The state trial court sentenced him to life in prison as a prison releasee reoffender. (*Id.*, pp. 129-36.) The state appellate court *per curiam* affirmed the convictions and sentences. (*Id.*, Ex. 4.)

Morell filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 6.) The state postconviction court summarily denied the

motion. (*Id.*, Ex. 7.) Morell provided to prison officials for mailing—and thus effectively filed—an amended Rule 3.850 motion that presented four additional claims (the claims raised in Ground Three of his § 2254 petition). (*Id.*, Ex. 14.) It does not appear, however, that the state postconviction court received his amended motion, and the state postconviction court did not rule on it. (*See* Doc. 30, pp. 5-6.) The state appellate court *per curiam* affirmed the denial of relief. (Doc. 10, Ex. 13.) When Morell filed a "Motion Pursuant to Manifest Injustice Exception to the Law of the Case Doctrine" in the state appellate court, arguing that the postconviction court failed to address the four claims that he properly presented in his amended Rule 3.850 motion, the state appellate court construed it as a motion for reconsideration and denied it without elaboration. (*Id.*, Exs. 14, 15.)

Morell initiated this action by filing a petition for writ of habeas corpus under § 2254. (Doc. 1.) The Court denied his petition and found that Ground Three was unexhausted and procedurally defaulted. (Doc. 18.) The Eleventh Circuit Court of Appeals concluded, under the "unique facts" of this case, that the claims raised in Ground Three were "exhausted and not otherwise procedurally defaulted." (Doc. 30, pp. 16, 18.) The Eleventh Circuit determined that Morell had timely and properly submitted the claims to the state courts for review and that the state appellate court incorrectly relied on a state procedural ground to reject the claims. (*Id.*, pp. 13-18.) Therefore, the Eleventh Circuit vacated the denial of Ground Three of the petition, and remanded for the limited purpose of addressing the claims raised in Ground Three.

(*Id.*, p. 18.) Upon remand, Respondent filed a supplemental response to Ground Three and Morell filed a reply. (Docs. 38, 43.)

## Facts[1]

A masked gunman walked into a Wachovia Bank in Hudson, Florida, on March 16, 2010. He shouted for everyone to get down on the floor. The gunman approached teller Joann Trancucci's window. He pointed the gun at her, asked her if she wanted to die, and demanded cash in "100s, 50s, [and] 20s" with no "no dye pack, no bait." (Doc. 10, Ex. 1, trial transcript p. 198.) Another teller, Rebecca Gamble, dropped to the floor. When Gamble attempted to reach forward to press an alarm, the gunman turned to her and told her not to move. After Trancucci put money into a white Walmart bag, the gunman demanded "all the drawers" and approached Gamble's window. (*Id.*, p. 200.) As Gamble put money into the white Walmart bag, he pointed the gun at her and told her, "You better hurry or you're going to fucking d[i]e." (*Id.*, p. 201.) He ran out of the bank after Gamble gave him money. Gamble and Trancucci both observed that the man had a black ski mask, a jacket, and a black gun. Gamble noticed that the jacket was green. Gamble described him as about 6 feet tall with a medium build. Assistant bank manager Jennifer Goodchild, who was in an office, activated an alarm and also called 911 after the gunman left. A total of $7,889 was taken in the robbery.

---

[1] The factual summary is based on the trial transcript and appellate briefs.

When the gunman fled, bank customer Carl Darnell followed him to a nearby gas station, where he saw the gunman get into a red Chevrolet Cavalier. Darnell took down the car's license plate number. Darnell was certain that the man who robbed the bank was the same man who got into the red Cavalier.

Detective Dennis Notoli heard a BOLO on his police radio with the suspect car's description and license plate number. He and his partner saw the car and began following it. Once other police cars arrived as backup, Detective Notoli attempted to conduct a traffic stop, but the car led officers on a high-speed chase. When the car came to a stop after appearing to have mechanical issues, Lieutenant Erick Anthes decided to immobilize the car by shooting its rear tires. Morell was inside the car. Police drew their weapons and ordered Morell to surrender the firearm and exit the car, but Morell refused to do so. Morell pointed the gun at his head. Negotiators, a SWAT team, snipers, and air units arrived.

Detective Randy Ganter was a crisis manager who negotiated with Morell. He testified to the heavy law enforcement presence at the scene. Detective Ganter testified that he was able to get Morell's cell phone number, and that he had contact with Morell over the course of four-and-a-half hours before Morell put his firearm down and exited the car. Detective Ganter testified that he was concerned that Morell was going to commit suicide and that his goal was to ensure that Morell exited the car safely. Detective Ganter testified that Morell appeared to be under the influence of narcotics and that he surrendered with the understanding that he would be taken to a hospital for treatment.

Once in custody, Morell agreed to speak with Detective Anthony Bossone. Morell talked about his drug addiction and brought up the topic of the robbery. Morell told Detective Bossone that he borrowed the vehicle, drove to Pasco County, and committed the robbery. Morell stated that he chose Pasco County because it was far from where he lived. Morell admitted to using the jacket, mask, and white shopping bag. Morell's description of his firearm was consistent with the description of the firearm that the bank tellers gave police. After the interview, Morell was transported to a hospital for evaluation.

Inside the vehicle, police found a white Walmart shopping bag, a black ski mask, a green jacket, and $3,974 in cash. Another $3,915 in cash was on the road. The total amount of cash recovered, $7,889, was the same amount taken from the bank. Fingerprints on a strap that was placed around some of the money from the bank matched Morell's fingerprints.

## **Standards Of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Under 28 U.S.C. § 2254(a), a state prisoner obtains federal habeas relief by showing that he is in custody "in violation of the Constitution or laws or treaties of the United States." Under the AEDPA, if a claim has been denied on the merits in state court, a petitioner must demonstrate that the state court's adjudication of the claim was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination. 28 U.S.C. § 2254(d)(1)-(2). Here, the Court

reviews the claims in Ground Three *de novo* because the state courts did not rule on them. *See Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003) (stating that "[a]s the Florida courts failed to resolve the merits of Davis's claim, the present controversy falls outside of § 2254(d)(1)'s requirement that we defer to state court decisions that are not contrary to, or an unreasonable application of, clearly established federal law").

Morell's claims allege ineffective assistance of trial counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Morell must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Morell must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) further explains the high standard facing a petitioner who alleges ineffective assistance:

> When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir. 1992). And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy." *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993).
>
> Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one. And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately." *See White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992).

Upon review, Morell has not met his burden of demonstrating that trial counsel was ineffective.

## Discussion

**Ground Three(a)**

Morell contends that counsel was ineffective in failing to object when evidence about his "standoff with law enforcement bec[ame] a feature of the trial." (Doc. 1, p. 39.) Morell argues that this evidence "ha[d] nothing to do with the sole issue the jury

7

was there to decide" and that counsel "should have been familiar with the danger of unfair prejudice and objected before the irrelevant evidence became a feature of the trial." (*Id.*, p. 17.) Morell asserts that the jury was "so immersed in unrelated, unfair prejudicial evidence that there was no chance of defendant receiving a lawful verdict based solely on the evidence regarding the robbery charge." (*Id.*) He claims there is a reasonable probability that, absent counsel's performance, he would have been acquitted or alternatively the issue would have been preserved for appellate review. (*Id.*, p. 18.)

Morell has not shown entitlement to relief. Initially, as Respondent points out, Morell concedes that the standoff evidence was, to a degree, inextricably intertwined with the charges. Further, Morell utilized evidence about the standoff to argue that his statement to police was involuntary. Counsel contended that Morell felt desperate over his drug addiction and was suicidal, and that the promises of help made during the course of the standoff led him to surrender and say what he thought detectives wanted to hear so that he could get help. (Doc. 10, Ex. 1, trial transcript pp. 189, 191, 580, 592-97.) Thus, he does not show that counsel performed deficiently in not objecting to the standoff evidence.

Even assuming that counsel should have objected to this evidence, Morell does not show that he was prejudiced by counsel's performance. The jury heard significant evidence of Morell's guilt aside from evidence about the standoff. The jury heard testimony describing the following: a customer followed the gunman to the red car and that Morell was the occupant of the red car; the mask, jacket, shopping bag, and

8

firearm found in and near the red car were consistent with those used in the robbery; the amount of money recovered in and near the red car was the same amount taken from the bank; Morell's fingerprints were found on a band wrapped around some of the money; and Morell made incriminating statements to police. In light of this evidence, Morell does not show that evidence of the standoff prevented the jury from rendering "a lawful verdict" in his trial. Morell does not establish a reasonable probability that the outcome of trial would have been different even if counsel had successfully objected to the introduction of evidence of the standoff.

Additionally, Morell's claim that trial counsel failed to preserve the matter for appellate review does not demonstrate *Strickland* prejudice because an allegation of ineffective assistance of trial counsel involves the outcome of the trial, not the outcome of a future appeal. *See Strickland*, 466 U.S. at 696 (stating that "the ultimate focus of the inquiry" when evaluating an ineffective assistance claim "must be on the fundamental fairness of the proceeding whose result is being challenged"). Because Morell has not established either prong of *Strickland*, he is not entitled to relief on Ground Three(a).

**Ground Three(b)**

Morell argues that counsel was ineffective in failing to object "to the State commenting on [his] silence, and shifting the burden of proof" during closing argument. (Doc. 1, p. 18). In the defense's closing argument, counsel argued that the jury should discount the incriminating statements Morell made to police. Counsel argued that Morell was not "in his right state of mind" and was willing to "say or do

9

anything to get help" at the time of the interview with Detective Bossone and that Detective Bossone "took advantage" of Morell's circumstances to get a statement from him. (Doc. 10, Ex. 1, trial transcript pp. 594-96.) Counsel argued that Morell believed law enforcement's assurances that he could get help, and stated:

> Ladies and gentlemen, I want you to consider all that, and I want you to disregard the statements that you h[e]ard on the audio, *because those statements were not made freely and voluntarily*. Those statements were a product of a suicidal man who was suffering from addiction and wanted help and was willing to say and do anything in order to get help.

(*Id.*, trial transcript pp. 596-97) (emphasis added).

> In rebuttal, the prosecutor argued:
>
> Now the defense wants you to, basically, ignore everything that is damaging or inculpatory to their client, and I suspect that's what you would need to do in order for you to return a verdict of anything besides guilty. Yes, ignore the entire confession from the Defendant for us. Why? Because it is not good for us.
>
> Ignore the facts that are being brought up during the confession, are facts being brought up by him. Not by law enforcement. Why? Because it is not good for us. Ignore that the first person to mention that this was armed robbery is him. Why? Because that's just not good for us. I mean that's what you are being asked to do. You are being asked to ignore the facts of this case.
>
> The defense is arguing that this confession wasn't voluntarily obtained. *Where is the evidence of that? What did you hear that would indicate that this confession was anything besides voluntarily obtained* [*?*]

(*Id.*, trial transcript pp. 604-05) (emphasis added).

Morell claims that the prosecutor's remarks about whether his statements were voluntary were "fairly susceptible as being interpreted as comments on his silence, as well as improperly shifting the burden of proof. This should be apparent when

10

considering defendant is the only one who could have offered evidence in support of what the State argued was missing from the defense. This was error that should have led defense counsel to object." (Doc. 1 at 18)

Morell does not show entitlement to relief under *Strickland*. The prosecution may not comment on a criminal defendant's exercise of his right to remain silent. *See Griffin v. California*, 380 U.S. 609, 615 (1965); *United States v. Knowles*, 66 F.3d 1146, 1162-63 (11th Cir. 1995). The standard in Florida for determining whether a comment constitutes a comment on silence is that "any comment which is 'fairly susceptible' of being interpreted as a comment on silence will be treated as such." *State v. DiGuilio*, 491 So.2d 1129, 1135 (Fla. 1986).

Similarly, the prosecution may not make comments that shift the burden of proof to the defense. *See United States v. Sosa*, 208 F. App'x 752, 756 (11th Cir. 2006) ("[P]rosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence.") (citation omitted). However, the prosecution does not necessarily shift the burden of proof by pointing out the lack of evidence supporting the defense theory. *See id.* at 756-57 (concluding that the prosecution did not improperly shift the burden of proof by "repeatedly asserting that [the defendant's] story was a fabrication because he failed to produce" supporting evidence when the prosecution "merely commented on the evidence presented at trial . . . and emphasized the lack of evidence corroborating [the defendant's story" and did not suggest that the defendant "should have produced or

11

needed to produce evidence corroborating his story in order to establish his innocence").

Morell does not show that the comments were "fairly susceptible" to being taken as a comment on his right to remain silent, or that the prosecutor was improperly shifting the burden of proof. Even assuming that the prosecutor's comment could be so construed, Morell does not show that an objection would have had merit because the prosecutor was making a fair reply to Morell's closing argument.

"A prosecutor, as an advocate, is entitled to make a fair response to the arguments of defense counsel." *United States v. Stanley*, 495 F. App'x 954, 957 (11th Cir. 2012) (citing *United States v. Sarmiento*, 744 F.2d 755, 765 (11th Cir. 1984)). This principle is also recognized in Florida law. "Based on notions of fundamental fairness, the doctrine of invited response allows the state to comment on the issues raised by the defendant." *Rivera v. State*, 840 So.2d 284, 288 (Fla. 5th DCA 2003). "The proper limit of a rebuttal is 'a reply to what has been brought out in the defendant's [closing] argument." *Brown v. State*, 18 So.3d 1149, 1151 (Fla. 4th DCA 2009) (quoting *Heddendorf v. Joyce*, 178 So.2d 126, 130 (Fla. 2d DCA 1965)). Furthermore, otherwise improper prosecutorial comments may be permissible when made in reply to matters raised by the defense. *See United States v. Rodgers*, 981 F.2d 497, 499 (11th Cir. 1993) ("The challenged remarks at closing argument, although probably improper if viewed in isolation, were replies in kind to comments appellant's counsel had made during appellant's opening and closing statements.") (citation omitted).

Taken in context, the prosecutor's rebuttal comments were made in response to the defense argument that Morell's statements to police were involuntary. The prosecutor responded to Morell's assertions by arguing that Morell's theory was wholly unsupported by the evidence and therefore should not be accepted. Morell does not show that this argument, when made in rebuttal to the defense's closing argument, was improper. As Morell does not show that an objection had merit, he cannot demonstrate that counsel performed deficiently. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Nor does Morell show that he was prejudiced as a result of counsel's performance. Considering the State's significant evidence of guilt, Morell does not establish a reasonable probability of a different outcome at trial even if counsel had successfully objected to the prosecutor's comment. Furthermore, the comment was isolated, and the jury was instructed that the State carried the burden of proof of overcoming the presumption of innocence by a reasonable doubt, that Morell was not required to prove anything, and that the jury must not be influenced in any way by Morell's decision not to testify at trial. (Doc. 10, Ex. 1, trial transcript pp. 634-35, 638.) The jury "is presumed to follow the [trial] court's instructions." *United States v. Siegelman*, 640 F.3d 1159, 1184 (11th Cir. 2011); *see also United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) ("[T]he prejudice from the comments of a prosecutor which may result in a shifting of the burden of proof can be cured by a court's instruction regarding the burden of proof.").

Morell also cannot show that he was prejudiced on the basis that an objection would have preserved the matter for appellate review. *See Strickland*, 466 U.S. at 696. Morell has not demonstrated that counsel performed deficiently, or that he was prejudiced by counsel's performance. Morell contends that an evidentiary hearing is needed to resolve Ground Three(b). An evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (stating that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"); Because Morell has not shown that counsel was ineffective under *Strickland*, he is not entitled to relief on Ground Three(b).[2]

**Ground Three(c)**

Morell argues that counsel was ineffective in not objecting when Morell was denied his right to confrontation during the testimony of prosecution witness Carl Darnell. Darnell, a customer in the bank, testified that he followed Morell on foot to a nearby gas station, where Darnell took down the license plate number of the car that Morell got into. Darnell testified that a bystander at the gas station verified that he had written down the correct number:

---

[2] To the extent Morell appears to argue in his reply that defense counsel was ineffective for essentially opening the door to the State's rebuttal argument by arguing that the confession was not voluntary, his claim is not properly before this Court. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.") (citation omitted). Even if the claim was properly raised, Morell fails to show *Strickland* prejudice for the same reasons discussed in the body of this order.

14

> THE STATE: And you were able to give [a description of the gunman] to the law enforcement officers along with the tag that you took down?
>
> DARNELL: There was a lady there and she was in a black SUV and she was right in behind the car. And I told her I said look I have the license number, the man just robbed the bank there would you follow that car and make sure that it's the same number that I have here in my hand because I was kind of shaky at the time. And so, she followed it around the bank at the end of the parking lot, there's another bank there, and she came back and *she told me the number and she said, yes, the same number* and that's when I gave it to police.

(Doc. 10, Ex. 1, trial transcript p. 277) (emphasis added).

Morell claims that "the State was permitted to improperly bolster the eyewitness testimony with that of a lady in an SUV without providing defendant an opportunity to cross-examine the lady on such a material issue." (Doc. 1 at 19.)

The Confrontation Clause of the Sixth Amendment provides that in a criminal prosecution, "[t]he accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause permits "[t]estimonial statements of witnesses absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 541 U.S. 36, 59 (2004). The Confrontation Clause does not apply to non-testimonial out-of-court statements. *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007) ("Under *Crawford*, . . . the Confrontation Clause has no application" to "an out-of-court nontestimonial statement not subject to prior cross-examination.").

Testimonial statements include those "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available

15

for use at a later trial." *Crawford*, 541 U.S. at 52; *see also Davis v. Washington*, 547 U.S. 813, 822 (2006) (providing that statements are testimonial when "circumstances objectively indicate that . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."). Statements "are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 at 822; *see also Michigan v. Bryant*, 562 U.S. 344, 370 (2011) ("[S]tatements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation.").

    Morell does not show that the bystander's statements confirming the license plate number were testimonial. It appears the bystander was merely verifying descriptive information at Darnell's request upon Darnell's representation that a bank robbery suspect was leaving the scene. Thus, the bystander's comments were made during an ongoing emergency. There is no indication that the circumstances were such that the bystander would think that her comments' primary purpose was for later use in a legal proceeding.

    Moreover, even assuming that counsel should have objected to the testimony, Morell fails to show *Strickland* prejudice because he does not establish a reasonable probability that the outcome of trial would have been different given the State's evidence of guilt. Even without the bystander's statement, the evidence shows that Darnell took down the license plate number, police found the vehicle, police took

Morell into custody from the vehicle, and Morell ultimately made incriminating statements. Additionally, the State presented highly incriminating evidence that the amount of money found in the vehicle and on the road matched the amount taken from the bank, and that the jacket, mask, shopping bag, and firearm recovered from Morell's car were consistent with those used by the gunman. Again, Morell cannot show that he was prejudiced because counsel's failure to object left the issue unpreserved for appellate review. *See Strickland*, 466 U.S. at 696. Because Morell does not establish either deficient performance or resulting prejudice under *Strickland*, he is not entitled to relief on Ground Three(c).

**Ground Three(d)**

Morell claims that he is entitled to relief based on the cumulative effect of counsel's alleged errors. Because Morell has not established any individual instances of ineffective assistance, he cannot obtain relief on the basis of cumulative error. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (stating that when none of the individual claims of error have merit, "we have nothing to accumulate"). Morell is not entitled to relief on Ground Three(d).

Accordingly, the Court **ORDERS** that Ground Three of Morell's petition (Doc. 1) is **DENIED**. The Court's earlier judgment against Morell (Doc. 19) is **VACATED**. The Court's earlier Order of denial (Doc. 18) is **VACATED IN PART** to the extent it denied Ground Three. The **CLERK** is directed to enter a new judgment against Morell

based on the earlier Order of denial as amended by this Order on remand, and to **CLOSE** this case.

### Certificate Of Appealability And Leave To Appeal *In Forma Pauperis* Denied

It is further **ORDERED** that Morell is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a COA. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To obtain a certificate of appealability, Morell must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Morell has not made the requisite showing. Finally, because Morell is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on September 22, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE